JAMES RICHARDSON ET AL., Appellants, *v.* ST. LOUIS NATIONAL BANK; F. TIEDEMAN & Co., Interpleaders, Respondents.

April 19, 1881.

Where a factor keeps the funds arising from his business, as such, separate from his individual funds, by depositing in bank to a separate "brokerage

account" the drafts received for goods sold for his customers, that these drafts include his commissions on such sales, is not such a mingling of his own with the trust-fund as will prevent the owner of the goods sold from following the fund, nor such as will enable the factor's general creditors to reach it by attachment.

APPEAL from the St. Louis Circuit Court, ADAMS, J. *Affirmed.*

E. B. SHERZER, for the appellants : The right to follow the proceeds of sales made by a broker depends upon the power of identification. — *Mills* v. *Post*, 7 Mo. App. 519 ; *Chase* v. *Alexander*, 6 Mo. App. 509.

BROADHEAD, SLAYBACK & HAEUSSLER, for the respondents : That an indebtedness may be liable to garnishment, it must be shown to be due as a money demand, unaffected by liens, prior encumbrances, or conditions of contract. — *Weil* v. *Tyler*, 43 Mo. 581 ; 38 Mo. 545 ; *Scales* v. *Hotel Co.*, 37 Mo. 520.

BAKEWELL, J., delivered the opinion of the court.

Appellants recovered judgment against James Post, and summoned the St. Louis National Bank as garnishee. Tiedeman & Co. claimed, by an interplea, that they were entitled to $274.40 of the funds. The Circuit Court found in favor of Tiedeman & Co., and rendered judgment in their favor for the full amount claimed by them, and awarded attorney's fees in favor of the bank against plaintiffs.

The testimony in the case is the evidence of Post himself and of the officers of the bank in which his account was kept. It is entirely uncontradicted, and is to the following effect : James Post was engaged in selling merchandise on commission, under the name of James Post & Co., no other person being represented in that name. He kept an account in the St. Louis National Bank, under the style, " James Post & Co., brokerage account." He opened the account thus to keep his brokerage account separate from any other. He deposited all the proceeds of sales made for him by other parties to that account. His commissions

for making sales, and his expenses incurred for drayage,. etc., about the sales, were included in these deposits. He had no other money in the bank. Nothing was deposited to this bank-account but proceeds of sales made for the various parties who employed him. When he found persons who had flour to sell, he would write to his Eastern correspondents and find out what they would pay for it; and if the holders here would take what was offered for it, he would ship it, and draw for the commissions and expenses, and deposit and sell the draft, and out of the proceeds pay the sellers the agreed price. He had drawn out all his commissions, etc., before the garnishment, and never claimed the money left in bank as his own. It belonged to those for whom he had made sales, and would have been handed to them had the bank not been summoned as garnishee. The items of the bank-account were as follows : —

| | | | | | |
|---|---|---|---|---|---|
| June 21 — Deposit . . | $56 | 14 | June 19 — Check . . | $71 | 50 |
| " 23      " . . | 10 | 00 | " 21      " . . | 47 | 45 |
| " 24      " . .. | 45 | 30 | " 24      " . . | 48 | 50 |
| " 25      " . . | 47 | 50 | July 15      " . . | 304 | 00 |
| July 16      " . . | 14 | 15 | " 17      " . . | 474 | 04 |
| " 17      " . . | 121 | 00 | | | |
| Balance . . | 651 | 40 | | | |
| | $945 | 49 | | $945 | 49 |

Of the amounts deposited, the first three items were the proceeds of sales of flour made for various parties. The aggregate of these items is $167.45  The checks of June 21st, 24th, and 25th are the amounts paid to Stinde, and Mauntel, Borgess & Co., for sales of their flour. These checks aggregate $150.94. The difference between these sums is apparently the amount of expenses and commissions for these transactions. It is $16.51. The deposit of $304 is the draft for Tiedeman & Co.'s flour, out of the proceeds of which Post was entitled to $29.60 for commissions and expenses, leaving $274.40 coming to them. The

deposit of $474.04 is a draft for sales made for Edgell & Co. Of this amount he paid them $75 on July 16th, drawing then the check for $85, out of which he retained $10 for himself. On the same day he drew checks for his own purposes for $36, making the total of $121 drawn out of bank on that day. The checks of $10 and $14.15 were drawn by Post for his own use. Deducting the amount due to Tiedeman from the balance in bank leaves $377, which, with the $75 already paid them, leaves a balance of about $18, being apparently the balance remaining in bank of the commissions and expenses on the Edgell & Co. sale. The $75 paid to Edgell & Co. on July 16th was paid to a representative of the firm at his request, who happened to be in St. Louis, and directed Post to draw and pay him this money out of the proceeds.

It appears very clearly that Post did not mix these trust-funds with his own. A portion of the fund belonged to him at the moment of each deposit, because he deposited by drafts drawn for the total amount of each sale. But nothing went into this deposit-account but the proceeds of these sales, and nothing was taken from it except to pay to the parties for whom it was set apart as a trust-fund, the proceeds of the sales of their goods, and to withdraw for Post's use such amounts as might be coming to him as the amount of his commissions and expenses about the matter, necessarily included in each transaction. Post made no use of trust-funds, and did not mingle them with his own in such a way as to impair the character of the fund. If an administrator were to deposit everything received by him for the estate to a separate account kept by him as administrator, his commissions as administrator would necessarily go into the deposit; but this fact would not impair the distinct character of the fund so as to make him liable as one who mixes trust-moneys with his own. All of the trust-moneys went into this deposit-account, and none of them were withdrawn. The money of Tiedeman & Co. is as

certainly there as if all these moneys had been placed, when received by Post, in a box from which he had never taken anything out but the amount of his commissions on the sales, and into which he had never put any other money. There might be an impossibility of identifying the coins, but there would be no doubt but that the identical trust-fund was in the chest.

It seems also that Post was not a mere go-between, but a factor, to whom these goods were delivered by the St. Louis owners, to ship to the purchasers ; and he dealt directly with the principals for whom, if not by whom, they were consigned to him.    But whether he was in truth a factor or a mere broker, having kept the moneys in a separate deposit as a special trust-fund, we have no doubt of the right of the principal to follow them as far as he may be able to identify them.

We think that the allowance to the garnishee in this case was properly taxed against plaintiff, and not against the fund.

The judgment is affirmed.    Judge LEWIS is absent ; Judge THOMPSON concurs.